**E-Filed 7/22/2009**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ADIBA MAHROOM, et al., | Case Number C 07-2351 JF (HRL) |
| Plaintiffs, | MEMORANDUM[1] OF INTENDED DECISION |
| v. | |
| BEST WESTERN INTERNATIONAL, INC., | |
| Defendant. | |

The above-entitled action was tried to the Court between April 27, 2009 and May 4, 2009. The Court heard the testimony of numerous witnesses and received voluminous documentary evidence. Having considered the evidence, the applicable law and the arguments of counsel contained in the post-trial briefing, the Court now issues its memorandum of intended decision. The purpose of the memorandum is to set forth the Court's view of the evidence at trial and to outline the remedies the Court intends to impose. Counsel for Defendant Best Western International, Inc. ("BWI") will be directed to prepare a formal order as well as findings of fact and conclusions of law in conformity with this memorandum.

---

[1] This disposition is not designated for publication in the official reports.

1

## I. PROCEDURAL HISTORY

2      Plaintiffs Adiba and Majid Mahroom ("the Mahrooms") have owned and operated a

3   BWI-affiliated motel (the Magic Carpet Lodge) in Seaside, California since 1975.  BWI is an

4   Arizona nonprofit membership organization consisting of individually owned and operated

5   motels and hotels.  Member establishments must abide by various Bylaws, Rules and

6   Regulations, and other policies relating to appearance and guest comfort.  BWI and its members

7   enter into a Membership Agreement that is renewed annually upon payment of membership dues.

8   In November 2006, after a hearing before BWI's Board of Directors (the "Board"), BWI

9   terminated its Membership Agreement with the Mahrooms, claiming that the Mahrooms had

10  failed to comply with a BWI policy known as the Design Excellence Guidelines ("Design

11  Guidelines").

12      In response to their termination, the Mahrooms filed the instant action in the Monterey

13  Superior Court on April 4, 2007, alleging breach of contract and related claims.  BWI removed

14  the action to this Court on April 30, 2007, and ten days later filed a motion to dismiss or transfer

15  venue and an application for a temporary restraining order ("TRO") to prevent the Mahrooms

16  from using the Best Western trademark during the litigation.[2]  The Court declined to issue a

17  TRO, concluding that there was a genuine dispute as to whether the Mahrooms had violated the

18  terms of the membership agreement and that the balance of the hardships favored the Mahrooms.

19  The Court also denied BWI's motion to dismiss or transfer venue because the Mahrooms' choice

20  of forum was not outweighed by factors favoring transfer.  BWI subsequently filed an answer and

21  counterclaims, alleging breach of contract and related claims.  Both parties seek damages and

22  injunctive relief.[3]

23

24  ───────────────

25      [2] BWI also filed a lawsuit against the Mahrooms in the United States District Court for
    the District of Arizona on April 19, 2007, alleging breach of contract and related claims.  The
26  Arizona court denied BWI's application for a TRO, concluding that under the first-to-file rule
    this Court should determine venue.

27
        [3] On February 3, 2009, the Court denied BWI's motion for partial summary judgment on
28  the Mahrooms' claim for injunctive relief.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II. DISCUSSION[4]

A.  Mahrooms' Claims for Relief.

The Mahrooms assert claims for declaratory and injunctive relief, breach of contract, and violation of the California Franchise Relations Act ("CFRA"), Cal. Bus. & Prof. Code § 20000 *et seq*.

### 1.  Breach of Contract

To prevail on a breach of contract claim, a plaintiff must show (1) the existence of a valid contract; (2) plaintiff's performance or an excuse for nonperformance; (3) breach by the defendant; and (4) damages. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).  It is undisputed that at the time of the termination hearing in November 2006, the Magic Carpet Lodge was not in full compliance with BWI's Design Guidelines. Nonetheless, the Mahrooms argue that their termination was improper because (1) a member cannot be terminated for failure to comply with the Design Guidelines, and (2) even if there was

_____

[4] The parties appear to disagree with respect to whether Arizona or California law governs the instant dispute.  In a footnote in its post-trial brief, BWI argues without citation to authority that California law applies because the Mahrooms are asserting claims under California law.  In fact, the Mahrooms assert claims under both California and Arizona law.  Because the Court concludes that the Membership Agreement is subject to the California Franchise Relations Act ("CFRA"), Cal. Bus, & Prof. Code § 20040.5 renders the venue provision of the Membership Agreement unenforceable.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497-98 (9th Cir. 2000) ("§ 20040.5 expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue.").  However, the choice-of law-provision is contained in a separate paragraph of the Membership Agreement, and the Mahrooms cite no authority holding that § 20040.5 also voids a choice-of-law provision.  Nonetheless, it appears that the choice-of-law provision may be disregarded because (1) the Mahrooms intentionally have asserted claims under California law, specifically invoking the CFRA; (2) the public policy provisions of the CFRA give the Court discretion to apply California law, and (3) choice-of-law provisions have been held invalid when their enforcement would be unconscionable.  *See Scott v. Snelling and Snelling, Inc.*, 732 F. Supp. 1034, 1039 (N.D. Cal. 1990) ("Generally speaking, under California choice-of-law principles, a provision in a contract dictating the law by which the contract should be interpreted is given deference.  However, California law will not give force to a choice-of-law clause where the contract contains a provision which violates a 'strong California public policy.'") (quoting *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 673 (1971)).  Perhaps most importantly, the determination as to whether Arizona or California law applies does not affect the ultimate disposition of any of the claims in this case.

Case No. C 07-2351 JF (HRL)
MEMORANDUM OF INTENDED DECISION
(JFLC1)

a right of termination, the Mahrooms were in substantial compliance with the Design Guidelines by November 2006 and thus their termination was unreasonable.  They also argue that the termination hearing was conducted in an unfair manner, and that the ultimate decision to terminate them was tainted by discrimination.

> ### a.  The BWI Board had the Right to Terminate a Member for Failure to Comply with the Design Guidelines

The Membership Agreement provides in relevant part as follows:

> Best Western is a membership organization providing rights and obligations as set forth by the membership in the 'Bylaws' and as set forth by the Board in the 'Rules and Regulations.'  In connection only with the Hotel, Best Western agrees to provide to applicant all rights, and Applicant agrees to abide by all obligations, as may be established from time to time in the duly adopted Bylaws and Rules and Regulations.

Pl. Ex. 3 at 3.  The agreement may be terminated "upon default of any obligation to Best Western, as more fully set forth in the Bylaws, Rules and Regulations, and Operations Manual." *Id.* at 4.

The June 2006 version of the Bylaws states in relevant part that members have "the right to vote on any change in Best Western's Rules and Regulations, as defined in these Bylaws" and that "the right to continue membership in Best Western except where termination or cancellation is provided for pursuant to the fair application of established Bylaws and Rules and Regulations, which shall provide that cancellation may not occur until after a hearing before the Board of Directors."  Def. Ex. 468 at 3.  "Rules and Regulations" are defined as the "code of rules which defines certain rights and obligations of the members and is contained in the most current document entitled 'Rules and Regulations,' which document may only be adopted, amended or repealed by the members pursuant to Article III, Section 5 of these Bylaws."  *Id.* at 4.  The Bylaws provide that the Board of Directors may cancel a membership either for "[f]ailure to comply with the terms and conditions or to meet the standards as set forth in the Regulatory Documents"  or for "[f]ailure to operate, manage or maintain the property in such a way as to affect credit to the Corporation and the Members."  *Id.* at 5.  Prior to cancellation, BWI is obligated to provide notice to the member and must inform the member that it is entitled to a

4

1   hearing before the board to "show cause" why the membership should not be cancelled. *Id.* As

2   to the content of the notice, the Bylaws state merely that the "member shall be advised of the

3   decision of the Board in writing." *Id.*

4           Pursuant to the Bylaws, the Board also is empowered to "set policies for the strategic

5   direction of the Corporation." Def. Ex. 468 at 12. Accordingly, the Board may adopt policies

6   that members must follow, and a member may be terminated for not complying with such

7   policies. *See* Bylaws at 5 (Board may terminate member for noncompliance with standards set

8   forth in "Regulatory Documents,"[5] which include "Guidelines," and there is no requirement that

9   Guidelines or other policies need to be put to a member vote). Other policies, such as those

10  embodied in the Rules and Regulations, may be amended only through a vote by the members.

11  Although the Design Guidelines are not mentioned in the Bylaws or Rules and Regulations, they

12  nonetheless may constitute an enforceable policy. The Rules and Regulations provide that "[t]he

13  Rules and Regulations, New Construction Guidelines and Renovation & Refurbishing Guidelines

14  may be adopted, amended or repealed, and the orders or directives of the Board may be adopted,

15  amended, repealed or rescinded only by the Board in accordance with the Bylaws." Def. Ex. 333

16  at 4. Although this language is not a model of clarity, the logical reading of the relevant

17  documents is that the Rules and Regulations must be adopted and amended pursuant to the

18  Bylaws (which require that changes to the Rules and Regulations be through a vote of the

19  membership), while the Design Guidelines (which appear to be a part of the New Construction

20  and Refurbishment Guidelines, generally referred to herein as "Guidelines") do not require a

21  membership vote for implementation or amendment.[6]

22  ───────────────

23        [5] Regulatory Documents are defined as the "Articles of Incorporation, these Bylaws, and
    the Rules and Regulations; and the Membership Application, guidelines, standards, resolutions
24  and policies adopted by the Board from time to time (including brand identity, quality assurance,
    customer care, new construction, refurbishment and design manuals and policies); and
25  documents defining terms or rights of Membership; as any of them may be amended from time to
    time." Def. Ex 468 at 4.
26

27        [6] Certain requirements for member properties are set forth in the Rules and Regulations.
    For example, the breakfast service requirements are detailed extensively in the Rules and
28  Regulations. At trial, a BWI witness testified that any change to the breakfast rules would be

                                                  5

### b. BWI Properly Terminated the Mahrooms for Noncompliance with the Design Guidelines

Because the Mahrooms were not in full compliance with the Design Guidelines at the time of the November 2006 termination hearing, they were in "default" under the Membership Agreement. Pursuant to the Rules and Regulations, violation of any Guidelines may result in a member property being placed in probationary status. Def. Ex. 333 at 21. Continued violation of either the Bylaws, Rules and Regulations, Guidelines, or any Board directives may result in termination. *Id*. at 22. Prior to termination, a member may demand a hearing and submit a written answer to any charges. *Id.* at 23. Pursuant to the Rules and Regulations,

> [T]he order of proceeding during the hearings shall be as
> determined by the Board, provided the member has a full and fair
> opportunity to present relevant and material evidence in support of
> his position. The burden of proof of charged violations sufficient
> to justify cancellation of membership and compliance with the
> procedures required by the Bylaws and these Rules and
> Regulations shall be upon the Association.

*Id.* at 24. Upon cancellation, a member may request reconsideration of the adverse decision. *Id.*

The Mahrooms were placed on probation as early as September 2005 (it is unclear from the record when their actual probationary status began). On August 21, 2006, BWI informed the Mahrooms that in light of their continued noncompliance with the Design Guidelines, a termination hearing would be held before the Board. Pl. Ex. 50 at 1. The August 2006 notice set forth the reasons for the adverse action, all of which related to the Mahrooms' failure to comply with the Design Guidelines, and included several major required actions, including "total renovation" of the lobby and guestrooms. Pl. Ex. 50. BWI notified the Mahrooms that they could provide a written response to the Board prior to the hearing, which they did (including one letter from their counsel). Pl. Exs. 57-58, 67. BWI also provided additional instruction with respect to hearing procedures and the evidence that could be submitted in support of continued

---

subject to a vote by the membership. The Mahrooms argue that by parity of reasoning the Design Guidelines are invalid because the Guidelines never were voted upon by the members. However, as discussed herein, the Board may implement some enforceable policies without a vote of the membership. The Mahrooms failed to prove that the Design Guidelines must be implemented through the Rules and Regulations rather than as a Board-ordered directive.

1  membership.  Pl. Ex. 59.  A BWI representative visited the property on October 27, 2006, and a

2  written report based on that visit was prepared and submitted to the Board prior to the hearing.

3  Pl. Ex. 66.  The Mahrooms submitted photographs of the property approximately ten days before

4  the hearing, and they presented a color board and additional photographs at the hearing itself.

5  Def. Ex. 327; Trial Tr. 817-819.  The Board viewed the photographs and gave the Mahrooms an

6  opportunity to be heard.

7       The termination hearing was held on November 6, 2006.  Pl. Ex. 69.  After the hearing,

8  the Board voted to terminate the Mahrooms' membership.  Pl. Ex. 69.  Notice of the termination

9  was provided by a letter to the Mahrooms dated November 8, 2006.  The letter did not list

10  specific reasons for the termination, but instead stated that "[a]fter full and complete

11  consideration of the information provided [both before and during the hearing], it was the

12  decision [of the Board] to cancel all aspects of the property's membership effective

13  immediately."  *Id*. at 1.  Through their counsel, the Mahrooms submitted a request for

14  reconsideration.  Pl. Ex. 71.  The reconsideration request stated that updated photographs of the

15  property had not been presented.  *Id*. at 2-3.  The request for reconsideration also stated that the

16  amount of money spent by the Mahrooms to improve the property was approximately $140,000,

17  instead of the $40,000 that the Board believed had been spent to date.  *Id*. at 3.  The request for

18  reconsideration was denied on December 15, 2006.  Pl. Ex. 73.

19       The Mahrooms' breach of contract claim is based in part on their allegation that the

20  Board did not have accurate information regarding the state of the property at the time of the

21  hearing, and thus the hearing was not fair and impartial as required by the Bylaws and Rules and

22  Regulations.  However, the evidence presented at trial did not support their position.

23  Defendant's Exhibit 327 shows that the Board considered multiple photographs of the property,

24  many of which were taken just ten days before the hearing.  These photographs show clearly that

25  the Magic Carpet Motel was in need of substantial updating.  The existence of these photographs

26  is inconsistent with the Mahrooms' testimony that the only photographs considered by the Board

27  were those that the Mahrooms themselves brought to the meeting.  Nor did the Mahrooms

28  present any evidence to support their contention that a BWI design consultant, Nancy Baldwin,

1   should have been at the meeting.  The critical point is that the property was not in compliance at

2   the time of the hearing, and indeed many of the same deficiencies still were evident during a site

3   visit by the Court during trial, more than two years later.  The Mahrooms' claims that they were

4   thwarted in their efforts to improve the property by delays caused by BWI's suppliers were not

5   supported by the evidence.  The Mahrooms' continued violations of the Design Guidelines

6   undermine any argument that they could have remedied their breach of the Membership

7   Agreement in a timely manner.

8       Finally, the Mahrooms contend that they were discriminated against because they were

9   aware of other properties with defects that had not been put into probationary status.  However,

10   the evidence presented on this point was conflicting, and in any event the many BWI properties

11   were in different stages of review.  The credible trial testimony of BWI witnesses effectively

12   rebutted any allegations of discrimination or abuse of process.

13       The Mahrooms had the burden of proof on all elements of their claim.  *See Careau*, 222

14   Cal. App. 3d at 1388.  The Mahrooms failed to prove at trial that they were not in breach of the

15   Membership Agreement at the time of termination, or that BWI's actions amounted to wrongful

16   termination.  Accordingly, judgment on this claim will be entered in favor of BWI.

17       2.  Injunctive Relief

18       To obtain a permanent injunction, a plaintiff must demonstrate "(1) that it has suffered an

19   irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

20   to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

21   and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

22   disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

23   (2006).  The considerations with respect to a permanent injunction are substantially similar to

24   those applicable to a preliminary injunction, except that to obtain a permanent injunction, the

25   plaintiff actually must have succeeded on the merits.  *Sierra Club v. Penfold*, 857 F.2d 1307,

26   1318 (9th Cir. 1988); *Coleman v. Wilson*, 912 F. Supp. 1282, 1311 (E.D. Cal. 1995).  Whether to

27   grant or deny a request for a permanent injunction is within a court's equitable discretion.  *Ebay*,

28   547 U.S. at 391.  The Mahrooms did not prevail on their breach of contract claim, and as

8

1   discussed below injunctive relief is not available under the CFRA.  Accordingly, the Mahrooms

2   are not entitled to reinstatement as a member of the BWI organization.

3                   3.  Violation of the CFRA

4                        a.  Does the CFRA Apply?

5           In its order dated July 23, 2007, which denied BWI's motion to dismiss or transfer venue,

6   the Court examined the applicability of the CFRA.  The primary issue at that time was whether

7   the mandatory provisions of the CFRA superseded the forum selection clause in the Membership

8   Agreement.  The Membership Agreement designates Arizona as the forum for dispute resolution,

9   but § 20040.5 of the CFRA states that "[a] provision in a franchise agreement restricting venue to

10  a forum outside this state is void with respect to any claim arising under or relating to a franchise

11  agreement involving a franchise business operating within this state."  Thus if BWI is deemed to

12  be a franchisor, the forum selection clause does not apply.

13          Certain entities are exempt from the CFRA, including:

14              A nonprofit organization operated on a cooperative basis by and
                for independent retailers which wholesales goods and services
15              primarily to its member retailers and in which all of the following
                is applicable …
16

17                  (H) Each member and prospective member is provided with
                    an offering circular which complies with the specifications
18                  of Section 31111 of the Corporations Code.

19  Cal. Bus. & Prof. Code § 20001.  While the applicable statutory language does not provide

20  explicit instruction on this point, the Court concluded at the time of the motion hearing that an

21  offering circular (or some other notice of exemption) had to be provided upon renewal of the

22  Mahrooms' membership.[7]

23          After reviewing the additional evidence presented at trial, the Court reaffirms its

24

25          [7] The order stated in relevant part: "BWI argues under *Davis v. Gulf Oil Corp*., 572 F.
    Supp. 1393, 1398 (C.D. Cal. 1983), it only needed to provide the Disclosure Statement when the
26  parties first signed their initial agreement and not at the time of subsequent renewals.  However,
    the statute at issue in *Davis* was not Cal. Corp. Code § 31101 but rather Cal. Corp. Code §
27  31018.  The latter statute expressly states that it does not apply to renewal agreements, while the
    disclosure provision in Cal. Corp. Code § 31101 contains no such limitation.  In any event, the
28  Mahrooms assert that they *never* have received the statement."  Order at 7 (emphasis in original).

                                                    9

1    conclusion that the CFRA applies to the instant dispute.  "[A] franchise is a contract or

2    agreement, either express or implied, whether oral or written, by which (1) a franchisee is granted

3    the right to engage in a marketing system substantially prescribed by the franchisor; (2) the

4    business is substantially associated with the franchisor's trademark or other commercial symbol;

5    and (3) the franchisee is required to pay a franchise fee."  *Thueson v. U-Haul Intern., Inc.*, 144

6    Cal. App. 4th 664, 670 (2006) (citing Cal. Corp. Code, § 31005(a); Cal. Bus. & Prof. Code §

7    20001(a)-(c)).  All three conditions are met here.  Throughout these proceedings, BWI repeatedly

8    has contended that its affiliations properly are characterized as a "membership," rather than a

9    franchise, but the fact that BWI considers its affiliates to be members does not allow it to ignore

10   state law governing the franchisor-franchisee relationship.  While BWI contends that the $25,000

11   membership fee is not a "franchise fee," the cases it cites in support of this proposition are

12   inapposite.  *See*, *e.g.*, *Thueson*, 144 Cal. App. 4th at 674 (payment of incidental fees to alleged

13   franchisor for items such as phone service and a local computer terminal do not qualify as

14   franchise fees.).  The Mahrooms' annual payments were not tied to any services, and in fact there

15   was evidence at trial that the Mahrooms were threatened with termination in the early 1990's for

16   not paying the membership fee.  "[California's] statutes set a low financial threshold for

17   payments that may be considered franchise fees ($100 under the CFRA) and $500 annually under

18   the [California Franchise Investment Law]…Our statutes define a franchise fee as a fee paid for

19   the right to do business, not ordinary business expenses paid during the course of business."  *Id.*

20   at 673-74.[8]

21         BWI argues alternatively that it qualifies for the statutory exemption contained in §

22   20001(d)(3), which excludes "[a] nonprofit organization operated on a cooperative basis by and

23   for independent retailers which wholesales goods and services primarily to its member retailers."

24   The exemption applies only if "all of the following" additional conditions exist:

25              (A) Control and ownership of each member is substantially equal.

26              (B) Membership is limited to those who will use the services
                  furnished by the organization.

27

28         [8] *See also* www.corp.ca.gov/Commissioner/Releases/3-F.asp.

10

1      (C) Transfer of ownership is prohibited or limited.

2      (D) Capital investment receives no return.

3      (E) Substantially equal benefits pass to the members on the basis of
       patronage of the organization.
4
       (F) Members are not personally liable for obligations of the
5      organization in the absence of a direct undertaking or authorization
       by them.
6
       (G) Services of the organization are furnished primarily for the use
7      of the members.

8      (H) Each member and prospective member is provided with an
       offering circular which complies with the specifications of Section
9      31111 of the Corporations Code.

10     (I) No part of the receipts, income, or profit of the organization are
       paid to any profitmaking entity, except for arms-length payments
11     for necessary goods and services and members are not required to
       purchase goods or services from any designated profitmaking
12     entity.

13     (J) The nonprofit organization is subject to an action for rescission
       or damages under Section 3343.7 of the Civil Code if the
14     organization fraudulently induced the plaintiff to join the
       organization.
15
       Cal. Bus. & Prof Code § 20001(d)(3).
16
           As it was earlier, the parties' principal dispute at trial was whether the offering circular
17
       requirement was met.[9]  It is undisputed that BWI did not present an offering circular to the
18
       Mahrooms upon renewal of the Mahrooms' membership in 1994.  BWI argues that the CFIL
19

20     _____

21         [9]  To support their respective arguments as to the applicability of the CFRA, both parties
       intermix the definitions and provisions of the California Franchise Investment Law ("CFIL"),
22     Cal. Corp. Code § 31000 *et seq*., with those contained in the CFRA, which is part of the Business
       & Professions Code.  While the CFRA cross-references the CFIL to a limited extent, "the CFIL
23     protects consumers in the sale of franchises, and the CFRA regulates certain events after the
       franchise relationship has been formed."  *Thueson*, 144 Cal. App. 4th at 667 n.1.  At issue here is
24     the termination of the Membership Agreement, not its formation.  The CFIL is inapplicable to
       renewals.  *See Davis*, 572 F. Supp. at 1596 ("the CFIL was not intended to apply to renewals of
25     existing franchises.  The statute is concerned with 'prospective' franchisees who require certain
       disclosures in order to make an educated decision regarding the franchise offer.").  While
26     admittedly the case law is somewhat unclear, the Court is unaware of any persuasive authority
       that an exemption under the CFIL automatically exempts a franchisor from the requirements of
27     the CFRA.
28
                                                11

1 exempts it from this requirement. However, as discussed previously the provisions of the CFIL

2 are not relevant here. "[T]he burden of proving an exemption or an exception from a definition

3 is upon the person claiming it." Cal. Bus. & Prof. Code § 20009. The Court finds that BWI has

4 not met its burden.

5      In addition, it appears from the evidence at trial that the requirement of the CFRA that

6 "[c]ontrol and ownership of each member is substantially equal" has not been met. As the

7 instant case amply illustrates, the BWI members that comprise the Board clearly have greater

8 power than other members. While BWI points out that all members, including the Mahrooms,

9 have the power to enact rules and change the composition of the Board, the discretionary power

10 invested in the Board (upon which BWI relies to justify its unilateral implementation of the

11 Design Guidelines) undermines BWI's argument.

12                  b. BWI's Violation of the CFRA

13      Pursuant to the statute, "no franchisor may terminate a franchise prior to the expiration of

14 its term, except for good cause. Good cause shall include, but not be limited to, the failure of the

15 franchisee to comply with any lawful requirement of the franchise agreement after being given

16 notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to

17 cure the failure." Cal. Bus. & Prof. Code § 20020. BWI complied with this provision of the

18 CFRA, as it had good cause to terminate the Mahrooms under the Membership Agreement, and

19 notice of the deficiencies in the Mahrooms' performance was provided in August 2006,

20 approximately ten weeks prior to the termination hearing. At least some deficiencies still existed

21 at the time of the hearing, in particular the outdated guest rooms.

22      BWI informed the Mahrooms of the termination decision by letter on November 8, 2006.

23 Pursuant to the CFRA, a termination notice:

24           (a) Shall be in writing;
          (b) Shall be posted by registered, certified or other receipted mail, delivered by

25           telegram or personally delivered to the franchisee; and
          (c) Shall contain a statement of intent to terminate or not renew the franchise:

26                (1) Together with the reasons therefor, and
               (2) The effective date of such termination or nonrenewal or expiration.

27

28 Cal. Bus. & Prof Code § 20030. The termination letter appears to have been sent by express

12

1    mail, and it stated that the termination was "effective immediately."  Pl. Ex. 70.  With respect to

2    the reasons for termination, the letter merely recited that "[a]fter full and complete consideration

3    of the information provided, it was the decision [of the board] to cancel all aspects of the

4    property's membership effective immediately.  Pl. Ex. 70 at 1.  This letter did not state with

5    adequate specificity the reasons for the termination.  At trial, BWI's witness admitted that the

6    termination notice was a "form letter."  Tr. Trans. 833.  Accordingly, the notice of termination

7    did not meet the requirements of § 20030.

8         "In the event a franchisor terminates or fails to renew a franchise other than in accordance

9    with the provisions of this chapter, the franchisor shall offer to repurchase from the franchisee

10   the franchisee's resalable current inventory meeting the franchisor's present standards that is

11   required by the franchise agreement or commercial practice and held for use or sale in the

12   franchised business at the lower of the fair wholesale market value or the price paid by the

13   franchisee."  Cal. Bus. & Prof. Code § 20035.  Interpreting California law, the Ninth Circuit has

14   held that the repurchase remedy is the sole civil remedy available to an aggrieved franchisee

15   under the CFRA.  *See Boat & Motor Mart v. Sea Ray Boats, Inc.*, 825 F.2d 1285, 1291 (9th Cir.

16   1987).  The CFRA itself does not provide for an award of damages.  *See id.* ("The legislature has

17   known how to give damage actions to injured franchisees.  In the California Franchise Relations

18   Act it has not accorded such protection.").

19        A franchisee still may recover damages through other claims for relief.  *See* Cal. Bus. &

20   Prof. Code § 20037 ("nothing in this article shall abrogate the right of a franchisee to sue under

21   any other law."); *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 174

22   (2004) ("[§ 20037] provides that a franchisee may seek any common law or statutory remedy for

23   wrongful termination of the franchise, including a breach of contract action.").  However, as

24   discussed above, the Mahrooms are not entitled to any remedy with respect to their breach of

25   contract claim for reasons entirely separate from BWI's failure to comply with the procedural

26   requirements of the CFRA.  Accordingly, while BWI's termination notice did not comply with

27   the CFRA, the Mahrooms are not entitled to any damages or injunctive relief as a result of that

28

13

1   violation.[10]

2       B.  BWI's Counterclaims

3       BWI asserted seven counterclaims in its answer:  (1) breach of contract through the

4   continued use of BWI's marks after termination of the Membership Agreement; (2) trademark

5   infringement (15 U.S.C. § 1114(1)); (3) false designation of origin and unfair competition (15

6   U.S.C. § 1125); (4) trademark dilution (15 U.S.C. § 1125(c)); (5) unfair competition under

7   California and Arizona law; (6) trademark dilution under California and Arizona law; and (7)

8   common law trademark infringement.  BWI's evidence at trial focused principally on the

9   calculation of liquidated damages and the alleged customer confusion caused by the Mahrooms'

10  continued use of BWI's marks.

11              1.  Breach of Contract and Liquidated Damages

12      The applicable provision of the Membership Agreement states:

13          For each day during which any Best Western Symbol…[is] used in
            connection with the Hotel, after fifteen (15) days following
14          termination of this License Agreement, Best Western may elect to
            claim from Applicant daily damages in an amount equal to fifteen
15          percent (15%) of the mean of the Hotel's room rates per room per
            day multiplied by the total number of rooms…It is understood and
16          agreed that said amount is fixed as liquidated damages because of
            the difficulty of ascertaining the exact amount of damages that may
17          be sustained because of such use.  It is further understood and
            agreed that said amount fixed as liquidated damages is a reasonable
18          amount, considering the damages that Best Western will sustain in
            the event of such use.

19
20  Pl. Ex. 3 at 5.  BWI presented witness testimony with respect to the liquidated damages

21  calculation through May 1, 2009, and in its post-trial brief BWI stated that as of May 31, 2009

22  the total amount of liquidated damages was $694,278.00.

23      "[A] provision in a contract liquidating the damages for the breach of the contract is valid

24  unless the party seeking to invalidate the provision establishes that the provision was

25  unreasonable under the circumstances existing at the time the contract was made."  Cal. Civ.

26  Code § 1671(b).  *See also Radisson Hotels Intern., Inc. v. Majestic Towers, Inc.*, 488 F. Supp. 2d

27  ──────────────

28      [10] However, as explained below BWI's failure to comply with the CFRA is relevant to the
    disposition of BWI's counterclaims.

1   953, 958 (C.D. Cal. 2007) ("Prior to 1977, liquidated damages provisions were on the whole

2   disfavored…The modern form of California's liquidated damages statute has switched the

3   presumption from invalidity to validity."). Accordingly, the Mahrooms have the burden of

4   showing that the liquidated damages provision is unreasonable. *See Radisson*, 488 F. Supp. 2d

5   953 at 959. Whether the liquidated damages provision is unenforceable is a question of law.

6   *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005) ("The question

7   whether a contractual provision is an unenforceable liquidated damages provision is one for the

8   court.").

9         In many cases, a liquidated damages provision is meant to compensate for lost future

10  performance, rather than a penalty for breach. *See*, *e.g.*, *Radisson*, 488 F. Supp. 2d 953 at 960-64

11  (liquidated damages provision upheld as valid means of compensation for lost future royalty

12  payments); *Morris*, 128 Cal. App. 4th at 1314 ("payment [may be] considered merely an

13  alternative to performance, and not a penalty."). The liquidated damages provision at issue here

14  was intended to act as a substitute to actual damages for a member's continued use of BWI's

15  marks after termination. Indeed, BWI offered no proof at trial of actual damages, and in its

16  post-trial brief it submits that the remedy for the Mahrooms' continued use of the marks should

17  be an amount equal to the liquidated damages calculation set forth in the Membership

18  Agreement.

19        The Mahrooms presented very little evidence to shift the burden of proof with respect to

20  the liquidated damages clause. It is undisputed that the Membership Agreement was drafted by

21  BWI and that the terms of the liquidated damages provision were not the product of arms-length

22  negotiations. The Mahrooms' argument against liquidated damages depends almost entirely

23  upon their contention that the Membership Agreement was not properly terminated. The

24  Mahrooms also argue that an award of almost $700,000 would be unreasonable and that the

25  clause should not be enforced pursuant to Cal. Civil Code § 1670.5, which provides that "[i]f the

26  court as a matter of law finds the contract or any clause of the contract to have been

27  unconscionable at the time it was made the court may refuse to enforce the contract, or it may

28  enforce the remainder of the contract without the unconscionable clause, or it may so limit the

15

1    application of any unconscionable clause as to avoid any unconscionable result."

2         "Under California law, a contractual clause is unenforceable if it is both procedurally and

3    substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir.

4    2007).  The procedural prong asks whether the contract was one of adhesion.  *See id.* at 1073.

5    The substantive prong focuses on whether terms of the agreement are "unduly harsh or

6    oppressive."  *Id.* at 1075 (citation omitted).  A sliding scale approach is used when evaluating

7    these two prongs; a showing of a serious procedural defect will overcome a relatively

8    non-oppressive clause, and vice versa.  *See id.* at 1072.  "[U]nconscionability is determined as

9    of the time the contract was entered into, not in light of subsequent events."  *Morris*, 128 Cal.

10   App. 4th at 1324.

11        Procedural unconscionability has been found to exist when the term is presented in a

12   "take it or leave it" manner.  *See Davis*, 485 F.3d at 1073.  The instant case presents such

13   circumstances, especially because the Mahrooms had been long-time members of Best Western

14   prior to the renewal of their Membership Agreement in 1994.  They either had to accept the

15   liquidated damages clause or withdraw from the Best Western system and rebrand the Magic

16   Carpet Lodge.  Such conditions are procedurally unconscionable.  *See Nagrampa v. MailCoups,*

17   *Inc.*, 469 F.3d 1257, 1282 (2006) ("Under California law, the critical factor in procedural

18   unconscionability analysis is the manner in which the contract or the disputed clause was

19   presented and negotiated").[11]  *See also Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 722 (2004)

20   (arbitration clause in employment agreement with longtime employee was procedurally

21   unconscionable because "[f]ew employees are in a position to forfeit a job and the benefits they

22   _____

23        [11] *Nagrampa* specifically discussed the issue of unequal bargaining power in the franchise
     context:  "Although franchise agreements are commercial contracts they exhibit many of the
24   attributes of consumer contracts. The relationship between franchisor and franchisee is
     characterized by a prevailing, although not universal, inequality of economic resources between
25   the contracting parties.  Franchisees typically…are small businessmen…seeking to make the
     transition from being wage earners and for whom the franchise is their very first business.
26   Franchisors typically, but not always, are large corporations.  The agreements themselves tend to
     reflect this gross bargaining disparity.  Usually they are form contracts the franchisor prepared
27   and offered to franchisees on a take-[it-] or leave-it basis."  469 F.3d at 1282 (quoting *Postal
     Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1715-16 (1996)).

28

                                              16

1    have accrued for more than a decade solely to avoid the arbitration terms that are forced upon

2    them by their employer.").

3           The instant case also raises a substantial question as to substantive unconscionability.

4    Substantive unconscionability may exist when there is a lack of mutuality, *i.e.*, when the terms of

5    a provision overwhelmingly favor the party in the stronger bargaining position.  *See Nagrampa*,

6    469 F.3d at 1286.  The Mahrooms lacked an analogous provision for their benefit in the event of

7    wrongful termination.  In fact, the Membership Agreement limited the Mahrooms' damages

8    recovery to the amount of membership fees paid in a single year.  Pl. Ex. 3 at 6.  This fact,

9    coupled with the procedural issues surrounding the liquidated damages provision, preclude BWI

10   from enforcing the provision in question.  In addition, BWI's liquidated damages calculation was

11   offered in lieu of a determination of the harm allegedly caused by the Mahrooms' continued use

12   of the BWI marks.  As discussed in further detail below, the Court has considerable discretion in

13   awarding damages for trademark infringement.

14                    2.  Trademark Counterclaims

15          "To be liable for trademark infringement under § 1125(a), a person must (1) use in

16   commerce (2) any word, false designation of origin, false or misleading description, or

17   representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics

18   of his or another person's goods or services."  *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902

19   (9th Cir. 2007) (citing 15 U.S.C. § 1125(a)).  "The Federal Trademark Dilution Act provides:

20   'The owner of a famous mark shall be entitled…to an injunction against another person's

21   commercial use in commerce of a mark or trade name, if such use begins after the mark has

22   become famous and causes dilution of the distinctive quality of the mark.'"  *Panavision Intern.,*

23   *L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998) (quoting 15 U.S.C. § 1125(c)).

24   There is no dispute that the Magic Carpet Lodge used Best Western's registered marks.  In

25   addition, Best Western presented evidence of consumer confusion and dilution of the mark.  The

26   Mahrooms thus may be held liable for trademark infringement and dilution under both federal

27   and state law.  *See id.*

28          As discussed above, BWI seeks $694,278.00 in liquidated damages for the Mahrooms'

                                                  17

1   continued use of BWI's marks.  In its pretrial statement, BWI stated that it intended to seek

2   actual damages and an accounting based on the Mahrooms' continued use of the BWI marks

3   following their termination, as well as treble damages pursuant to 15 U.S.C. § 1117(b) and an

4   award of special exemplary and/or punitive damages.  BWI also seeks injunctive relief enjoining

5   the Mahrooms from using the BWI marks or any confusingly similar marks in connection with

6   the operation of the Magic Carpet Lodge.

7        The Lanham Act provides that a trademark owner may recover "subject to the principles

8   of equity…(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of

9   the action."  15 U.S.C. § 1117(a).  A trademark owner need not prove actual damages.  Instead,

10  once infringement is demonstrated and the infringer's gross profits derived from the infringement

11  are shown, the burden shifts to the infringer to show "which, if any, of its total sales are not

12  attributable to the infringing activity, and, additionally, any permissible deductions for

13  overhead."  *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) (citing 15

14  U.S.C. § 1117(a)).  In addition, where the infringement is "intentional" or "knowing," a court

15  may award treble damages.  15 U.S.C. § 1117(b).  However, such an award may not be available

16  if there are "extenuating circumstances."  *See id.*

17       BWI has not met its burden of showing that it is entitled to actual damages.  While the

18  financial statements of the Magic Carpet Lodge were introduced into evidence, BWI did not

19  explain the extent, if any, to which room sales were attributed to the continued use of its marks.

20  *See Lindy Pen*, 982 F.2d at 1408 (trademark owner has "burden of establishing the defendant's

21  gross profits *from the infringing activity with reasonable certainty*.") (emphasis added).  In fact,

22  the Mahrooms' profits fell significantly during the period in question, and thus any determination

23  of actual damages would be speculative.  In addition, in light of BWI's failure to comply with the

24  CFRA, the Court concludes that an award of actual damages would be inappropriate.  *See Adray*

25  *v. Adry-Mart*, Inc., 76 F.3d 984, 991 (9th Cir. 1995) ("unclean hands weighs in the equitable

26  balance that underlies the design of a remedy").  Similarly, treble damages are inappropriate, as

27  the equitable principles that apply to the calculation of actual damages also apply to an award of

28  treble damages.  *See Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 620 (9th Cir. 1993) ("Under

18

1    either [§ 1117(a) or § 1117(b)], awards are 'never automatic and may be limited by equitable

2    considerations.'") (quoting *Lindy Pen*, 982 F.2d at 1409); *Playboy Enters., Inc. v. Baccarat*

3    *Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir. 1982) ("Section 35 of the Lanham Act gives

4    the trial judge discretion to increase the award of actual damages, not to exceed three times that

5    amount, according to the circumstances of the case."). Finally, the fact that the Court denied

6    BWI's motion for a preliminary injunction, thereby allowing the Mahrooms to use of the marks

7    during the pendency of the instant litigation, is an additional equitable consideration that weighs

8    against an award of enhanced damages.[12]  Although BWI has proved the elements of its

9    counterclaims for trademark infringement, the Court concludes that BWI is entitled only to

10   prospective injunctive relief.

### III. DISPOSITION

12   Counsel for BWI is directed to prepare proposed findings of fact and conclusions of law

13   as well as a judgment and permanent injunction in conformity with this memorandum.

15   IT IS SO ORDERED.

18   DATED: July 22, 2009

20   _____
     JEREMY FOGEL
21   United States District Judge

---

[12] For the same reasons, BWI is not entitled to any damages (actual or punitive) under any
state-law theories of trademark infringement or dilution.

Case No. C 07-2351 JF (HRL)
MEMORANDUM OF INTENDED DECISION
(JFLC1)

1    This Memorandum has been served upon the following persons:

2    Allison L. Kierman      allison.kierman@dlapiper.com, pat.kelly@dlapiper.com

3    Antony E. Buchignani      antony.buchignani@dlapiper.com, laverne.patane@dlapiper.com

4    Charles Joseph Stiegler      cstiegler@gormanmiller.com

5    Cynthia A. Ricketts      cindy.ricketts@dlapiper.com, kathy.sieckman@dlapiper.com

6    Jeffrey Mark Hamerling      jeffrey.hamerling@dlapiper.com, vicki.quarve@dlapiper.com

7    John C. Gorman      jgorman@gormanmiller.com

8    Rachel Elizabeth King Lowe      rachel.lowe@dlapiper.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-2351 JF (HRL)
MEMORANDUM OF INTENDED DECISION
(JFLC1)